UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TINA SYLVIA | ) | 3:20-CV-01622 (KAD) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENSINGTON AUTO SERVICE, INC. | ) | |
| d/b/a AUTO DRIVE SALES AND | ) | |
| SERVICE | ) | |
|     *Defendant*. | ) | June 26, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 10)**

Kari A. Dooley, United States District Judge

This action arises out of Plaintiff Tina Sylvia's purchase and financing of a used car from Defendant Kensington Auto Service, Inc. d/b/a Auto Drive Sales and Service. Plaintiff brought this action alleging violations of the Truth in Lending Act (TILA), the Connecticut Retail Installment Sales Financing Act (RISFA), and the Connecticut Unfair Trade Practices Act (CUTPA). Pending before the Court is Plaintiff's Motion for Default Judgment. For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion and directs that Judgment enter in favor of the Plaintiff in accordance with the following.

**Background**

On February 26, 2020, Plaintiff purchased a 2008 Jeep Patriot from Defendant for $6,583.11. Plaintiff paid $500 down and financed the balance with Defendant. Defendant provided Plaintiff with a Purchase Order indicating that Plaintiff would make payments of $201.47 to Defendant. In August 2020, the car broke down and, after picking up the car, Defendant told Plaintiff that the car's cradle, or sub-frame, was cracked. On September 18, 2020, Plaintiff, through counsel, served notice on Defendant that she was rescinding the contract due to violations of

RISFA. Plaintiff also demanded a return of all sums paid to Defendant, to include four installment payments. Defendant, still in possession of the car, failed to return any sums paid by Plaintiff.

On October 28, 2020, Plaintiff brought this action alleging violations of TILA, RISFA, and CUTPA based on the deficient content of the Purchase Order. Plaintiff also alleges a violation of CUTPA based on Defendant's sale of the car with a cracked sub-frame. Plaintiff seeks TILA statutory damages, punitive damages, return of all amounts paid to Defendant, attorney's fees and costs, and an order granting rescission of the contract. Although served on November 6, 2020, Defendant failed to appear, answer, or otherwise defend the action. Therefore, Plaintiff moved, pursuant to Rule 55(a), for entry of default against Defendant, which motion the Court granted on February 23, 2021. On March 19, 2021, Plaintiff filed, pursuant to Rule 55(b), the instant Motion for Default Judgment. Plaintiff supplemented the motion on May 14, 2021. On May 19, 2021, the Court held an evidentiary hearing on the motion and admitted additional exhibits into the record.

**Standard of Review**

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party[.]" *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). Here, the Plaintiff has sufficiently alleged facts supporting her claims and has produced evidence of damages to the Court's satisfaction. Accordingly, Defendant's failure to appear, respond or otherwise defend the instant action renders a default judgment in favor of the Plaintiff appropriate.

In determining damages, "[t]he outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992) (internal brackets and citation omitted). In making this determination and evaluating the allegations asserted against the Defendant, the Court may "deem[ ] all the well-pleaded allegations in the pleadings to be admitted" by Defendant. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). Here, the Court also has the benefit of the Plaintiff's testimony and a series of documents establishing both liability and damages.

**Discussion**

    **TILA**

TILA seeks to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a). Thus, TILA "provides for a private right of action for damages where a creditor fails to make disclosures required by the Act." *Conley v. 1008 Bank St., LLC*, No. 3:20-CV-284 (CSH), 2020 WL 4926599, at *4 (D. Conn. Aug. 22, 2020) (internal quotation marks and citations omitted).

Upon review of Plaintiff's allegations, which are deemed admitted, and the Purchase Order, it is manifest that the Purchase Order does not include many of the disclosures mandated by TILA. *See* 15 U.S.C. § 1638(a). For example, the Purchase Order does not include the finance charge Plaintiff was required to pay. *See id.* § 1638(a)(3) (requiring disclosure of the finance charge). Further, to the extent that the Purchase Order arguably includes the alleged missing disclosures, or

sufficient information from which the missing disclosures might be gleaned, the TILA requirements are not "clearly and conspicuously in writing," as required. 12 C.F.R. § 226.17(a)(1). Thus, the Court finds that Plaintiff has established a TILA violation.

**RISFA**

"RISFA sets forth the conditions governing retail installment sales contracts under Connecticut law." *Hernandez v. Saybrook Buick GMC, Inc.*, No. 3:20-CV-00438 (VAB), 2020 WL 7137417, at *10 (D. Conn. Dec. 4, 2020) (internal quotation marks and citation omitted). It provides that "[e]very retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer." CONN. GEN. STAT. § 36a-771(a). It also "requires sellers to comply with the Connecticut Truth in Lending Act, which in turn incorporates the requirements of the federal TILA and Regulation Z." *Conley*, 2020 WL 4926599, at *9 (internal quotation marks and citations omitted); *see* CONN. GEN. STAT. § 36a-771(b). Thus, insofar as Defendant violated TILA, it also violated RISFA. And given the vague and very limited content of the Purchase Order, the only document generated memorializing the sale of the car, it would be a stretch to consider the document a "retail installment contract" at all. Indeed, Plaintiff's allegation that she was not provided with any retail installment contract is deemed admitted.

**CUTPA**

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). It also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." *Id*. § 42-

4

110g(a). A CUTPA claim consists of three basic elements: (1) an ascertainable loss of money or property (2) that was caused by an unfair method of competition or an unfair or deceptive act (3) that occurred in the conduct of trade or commerce. *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 788–90 (2019). To determine when a practice is unfair, the Connecticut Supreme Court has adopted the so-called "cigarette rule" promulgated by the Federal Trade Commission. *Id*. at 790. Under this rule, courts must consider:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businesspersons[.]

*Id*. (alterations omitted; citation omitted; internal quotation marks omitted). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." *Id*. (citation omitted; footnote omitted; internal quotation marks omitted).

Here, Plaintiff argues that Defendant's TILA violation satisfies the public policy criterion for an "unfair" practice. Indeed, "[a] violation of TILA offends the public policy embodied in TILA, and several courts have thus held that a TILA violation constitutes a CUTPA violation." *Muñoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020). As Plaintiff has established that she suffered an ascertainable loss and there is no question that the TILA violation occurred in the conduct of trade or commerce, the Court finds that Plaintiff has established a CUTPA violation based upon the TILA violation.

Plaintiff also argues that Defendant violated CUTPA insofar as it violated CONN. GEN. STAT. § 14-62(g), which requires dealers to "complete a comprehensive safety inspection" of a used car before offering it for retail sale. Section 14-62(g) also requires that the safety inspection "be evidenced on a form approved by the commissioner," known as Form K-208. *See* Form K-208, State of Conn., https://portal.ct.gov/-/media/DMV/20/29/K208pdf.pdf?la=en (last visited June 25, 2021) (noting that "[t]his report shall be used by a CT licensed dealer to comply with CGS 14-62(g) and must be completed in its **ENTIRETY**").

Here, Plaintiff alleges that the Form K-208 she received incorrectly reflected that the frame/chassis of her car had passed inspection. ECF No. 10-2 at 8. Plaintiff therefore argues that, in fact, Defendant sold the car to Plaintiff with a cracked sub-frame and, thus, failed to disclose this defect in violation of Section 14-62(g). Such a violation is also a violation of CUTPA. *See Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 184–85 (D. Conn. 2020) (finding a CUTPA violation where a dealer violated Section 14-62(g), in part, by either failing to disclose a structural defect or to complete a comprehensive safety inspection). The Court finds that Plaintiff has established a CUTPA violation for this reason as well.

**Damages and Other Relief**

*TILA Statutory Damages*

Under TILA, "any creditor who fails to comply with any requirement . . . with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of the failure; (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . . except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000[.]" 15 U.S.C. § 1640(a). Here, Plaintiff asserts that she is entitled to the statutory maximum of $2,000 because the actual

amount of the finance charge is unknown and the Defendant will benefit from its disclosure violations if the Court awards her anything less. However, it is unclear how Plaintiff arrives at this conclusion and she does not otherwise suggest a method to calculate the statutory damages. Accordingly, the Court awards Plaintiff $1,000 in statutory damages.

### *Rescission*

"Rescission, simply stated, is the unmaking of a contract." *Metcalfe v. Talarski*, 213 Conn. 145, 153 (1989) (internal quotation marks and citation omitted). "It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract." *Id.* (internal quotation marks and citation omitted). "[R]escission of the contract [is] an implied remedy under RISFA." *See Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 113 (1987). "[A]s a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." *Id.* "In restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller." *Id.*

Plaintiff is entitled to a rescission of the contract and the return of all payments made to Defendant, to include the $500 down payment and the four $200 installment payments,[1] as a remedy for Defendant's RISFA violation. Here, Defendant has been in possession of the car since August 2020 when it broke down. Despite Plaintiff thereafter serving notice on Defendant that she was rescinding the contract, Defendant has failed to return any sums to Plaintiff. Therefore, to restore the parties to their respective positions prior to the contract, the Court orders Defendant to refund to Plaintiff all payments made by Plaintiff, i.e., $1,300. *See Saybrook Buick GMC, Inc.*,

---

[1] At the evidentiary hearing, Plaintiff confirmed that the four installment payments amounted to $800 not $805.88.

7

2020 WL 7137417, at *10–11 (finding that plaintiff was entitled to rescission as a remedy for a RISFA violation after returning car to defendant). The Court also finds the contract rescinded and that there is no further indebtedness to the Defendant thereunder. *See Metcalfe*, 213 Conn. at 159 ("[T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes[.]" (internal quotation marks and citation omitted)).

### *Punitive Damages*

Under CUTPA, "[t]he court may, in its discretion, award punitive damages[.]" CONN. GEN. STAT. § 42-110g(a). "In order to award punitive . . . damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich v. Groth*, 310 Conn. 375, 446 (2013) (internal quotation marks and citation omitted). "In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Id.* (internal quotation marks and citation omitted). "While the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." *Perkins v. Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649 (1999).

Plaintiff argues that she is entitled to punitive damages because Defendant sold her an unsafe car and then kept her money after she returned it. The Court, however, does not believe that the circumstances warrant an award of punitive damages. Although the Court must deem a party's default to "constitute a concession of all well pleaded allegations of liability," the Court need not consider the default to be "an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Plaintiff principally relies on her allegations that Defendant sold her an unsafe car. However,

it is unclear whether Defendant knowingly or recklessly did so. Although the K-208 form indicated that the car passed inspection, and the Court deems admitted the allegation that the sub-frame was cracked at the time of the sale, these two facts in combination do not establish the type of wanton, willful, or reckless conduct necessary for an award of punitive damages. It may well have been Defendant's negligence that caused the vehicle to pass inspection. The evidence, therefore, does not "reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights[.]" *Ulbrich*, 310 Conn. at 446 (internal quotation marks and citation omitted). Accordingly, Plaintiff is not entitled to punitive damages under CUTPA.

### *Attorney's Fees and Costs*

Plaintiff is entitled to attorneys' fees and costs pursuant to TILA and CUTPA. *See* 15 U.S.C. § 1640(a)(3) (noting that the creditor is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court"); CONN. GEN. STAT. § 42-110g(d) ("the court may award . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery"). To determine reasonable attorneys' fees courts multiply "a reasonable hourly rate by the number of reasonably expended hours." *See Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). "It is plaintiffs' burden to establish with satisfactory evidence—in addition to the attorney's own affidavits—why their requested fee is appropriate." *Kennedy v. Supreme Forest Prod., Inc.*, 295 F. Supp. 3d 113, 124 (D. Conn. 2017) (internal quotation marks and citations omitted). Also, "[t]o determine whether a requested hourly rate is reasonable, courts may take judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id*. at 124–25 (internal quotation marks and citation omitted).

Here, Plaintiff seeks $6,000 in attorneys' fees and costs. The attorneys' fees are based on hourly rates of $400 for Attorney Daniel S. Blinn; $275 for Attorney Brendan L. Mahoney; $150 for Paralegal Lori Minor; and $95 for Legal Assistant Dora Fernandez. Upon review of the supplemental memorandum, Attorney Blinn's affidavit, and the "Pre-Bill Worksheet," the Court finds that Plaintiff's request of $6,000 in attorneys' fees and costs is reasonable and is so awarded. *See* ECF Nos. 16, 16-1, 16-2; *see also Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d at 188 (finding these same rates to be reasonable).

**Conclusion**

Judgment shall enter against the Defendant and in favor of the Plaintiff in the amount of $8,300 and the contract for the purchase of the car is hereby rescinded. The Clerk of the Court is directed to prepare the Judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of June 2021.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE